ESTHER E. RAHN, APPELLEE, V. HARRY RAHN, APPELLANT.

113 N. W. 2d 189

Filed February 2, 1962. No. 35036.

*Theodore L. Richling* and *Shrout & Foley,* for appellant.

*L. W. "Jim" Weber* and *Paul E. Watts,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

YEAGER, J.

This is an action for divorce which was instituted by Esther E. Rahn, plaintiff, appellee here, in the district court for Sarpy County, Nebraska, against Harry Rahn, defendant, appellant here. In the action the defendant filed a cross-petition on the basis of which he sought a decree of divorce from the plaintiff. There were two children born of the marriage of the parties. One, a son, had attained his majority. The other, a daughter, was a minor, and each party prayed for an award of custody of this child.

The case was tried to the court and a decree of divorce was granted to the plaintiff. The custody of the minor child was awarded to the plaintiff. By the decree no alimony as such was awarded, but in lieu of alimony the plaintiff was granted the title to two parcels of real estate in Sarpy County, Nebraska, all household goods and furnishings contained in a house on one of the properties awarded to her, a 1940 Chevrolet automobile, $4,-790.20, being the balance in an account of the defendant in the Nebraska Savings & Loan Association, and $2,259. Also by the decree a final award was made of $900 for the attorneys for the plaintiff. In addition to this the defendant was ordered to pay $60 a month for the support of the minor child during her minority, or until the further order of the court.

From this judgment and an order overruling a motion for new trial, which was duly filed, the defendant has appealed. The brief of defendant contains numerous assignments of error as grounds for reversal. These however present basically three questions. The first is that of to which party, if either, a decree of divorce should have been granted? The second is, if a decree was proper, to whom should the custody of the minor child of the parties have been granted? The third is, in case a divorce decree was proper, what was proper in the area of alimony and division of property?

Certain facts upon which the ultimate determination must depend and about which there is no material dispute are that the parties were married March 18, 1933; that two children were born of the marriage, a son born January 1, 1934, and a daughter born March 28, 1947; that at the time of the marriage the plaintiff was about 20 years of age and the defendant about 40; that the parties have lived in Sarpy County; that the defendant during that time has engaged in farming and in the operation of a shop where he performed automobile repairing, welding, and other such types of work; that lately he is retired and disabled from personal engage-

ment in gainful employment; that the farming activities of the defendant from 1940 forward were carried on on 160 acres of land in which the defendant had an undivided one-fourth interest and on 96.29 acres of land in which he had an undivided one-fourth remainder interest; that prior to 1940 he farmed only the 160 acres; and that he rented this land on a crop or production basis whereby he received three-fifths and the owners of the 160 acres and the life tenant of the 96.29 acres received two-fifths. The shop of the defendant was on the land and there is no evidence that he paid anything for the use of the area. The parties also lived on the land.

On the question of whether or not one or the other of the parties was entitled to a divorce there is much dispute in the evidence. The alleged basis charged by each is cruelty practiced by the other. No good purpose could be served by setting forth in detail the testimony as to this. It appears that general reference will be sufficient.

The evidence of the plaintiff indicates that the defendant denied from the beginning paternity of the son, and through all of the years, in terms reflecting upon the chastity of the plaintiff, voiced to plaintiff his denial. Her evidence further indicates that the same character of denial of paternity of the daughter accompanied her birth and has continued throughout the years. The plaintiff testified that following the birth of the daughter and as a result of this attitude and the accusations conjugal relations between the parties were discontinued. This was not disputed by the defendant. Her evidence further discloses that the defendant habitually and over the years used toward her vile, profane, and abusive language which was at times in its nature threatening. On the other hand the evidence discloses that she used language of a like character, however to a lesser extent. There is no evidence that either used any violence upon or toward the other. There is no

evidence that these attitudes increased or decreased over the years.

This state of affairs, according to the evidence of the plaintiff, continued to June 18, 1960, on which date the parties went to Omaha, on which day after the return home the testimony of the plaintiff is that the defendant left the home and did not return until the following day, when he did return. He came in, drank a cup of coffee, and went away. The defendant denied that he left and remained away that night. Some time in the afternoon the plaintiff, the son, the daughter, and another young lady went swimming. On their return the defendant, his two sisters, and his mother were there. Some of them were sitting at a table. The plaintiff entered the room and according to her testimony, which testimony is supported by the testimony of other witnesses, said to the defendant: "Where have you been?" In response the defendant said: "You God damn whore, where have you been?" The son came in and said: "You can't talk to my mother like that, I have stood by too many years, you have got to cut that out." The plaintiff said that she got between the father and son, then the father made a lunge at her. The evidence as to the sequence of events thereafter is not certain but it appears that the son grabbed a chair and broke it over the table. Articles were tossed about violently and wildly, and in some manner a bone in the forearm of the defendant was fractured. Whether this was of the left or right arm is not made clear. Whether a blow from a part of the chair in the hands of the son or a fall caused the fracture is not made certain. It was testified that this incident was closed by the defendant running from the room with a statement that he would shoot those involved if it was the last thing he ever did.

The effect of the evidence of the defendant was to deny all of the improper conduct over the years and to place the blame for the incident occurring on June 19, 1960, on the son of the parties. The defendant spe-

cifically denied that he made the statements charged against him, and he charged that the fracture of the bone in his arm was produced by the acts of the son. He did not charge that he was assaulted by the plaintiff.

After hearing all of the evidence the trial court found that the plaintiff was entitled to a divorce and adjudicated accordingly.

The defendant urges that on the record this adjudication is not sustained under law by the evidence. The theory of this appears to be that the plaintiff as ground for divorce relies upon cruelty over a long period of years, proof of which is made by testimony of the plaintiff and which stands without corroboration.

It is true that a decree of divorce may not properly be granted upon the uncorroborated testimony of a party. See, § 42-335, R. R. S. 1943; Hines v. Hines, 157 Neb. 20, 58 N. W. 2d 505.

It may well be said that incidents of conduct alleged to have taken place before June 19, 1960, are without corroboration and if there was nothing else to be considered the contention might be availing. This however is not the case. The testimony in this area presents a background but the pleaded basis of the action was a complete incident taking place on June 19, 1960, which was corroborated.

The trial court heard the witnesses and observed them as they testified, and there is nothing in the record to justify a conclusion that it did not weigh and consider the evidence in this area properly and arrive at a correct decision. The award of a divorce to the plaintiff is therefore sustained.

As to the custody of the daughter there is nothing in the record on which to justify a disturbance of that part of the decree awarding custody to the plaintiff with the stated rights of visitation with the defendant. That part of the decree will be sustained.

There is no assignment of error questioning the amount of the allowance for child support.

The remaining matter for determination is that of what should be awarded to the plaintiff as alimony or in lieu thereof division of property.

In an approach to this it is pointed out that at the time of trial the plaintiff was of the age of about 49 years. The age of the defendant was about 69 years. There was no evidence that the plaintiff would in the future have any earning capacity. The defendant was retired and had no earning capacity. The evidence indicated that his health was such as to prevent him from engaging in any gainful occupation. The defendant was receiving social security at the rate of $86.40 a month. The plaintiff was receiving social security payments in the amount of $41.40 a month. Social security payments were being received by plaintiff for the daughter in the amount of $41.40 a month. The only other income that could be anticipated was from income property owned, securities, and money on hand and on deposit.

There is no evidence that the plaintiff brought any money or property to the marriage relationship. The defendant had some money and property at the time of the marriage. The amount cannot be reasonably determined, but it may well be said that it was not large.

It is reasonably inferable that the parties were frugal and hard working, and that by their joint efforts they accumulated some money and acquired some property. Two pieces of real estate or lots were purchased. One appears to have had a rental value of $85 a month and the other $75 a month. One was occupied by the plaintiff at the time of the trial. Each of these cost $5,500 and $1,685 was spent in improvement of them. The total value of the two lots was fixed by the trial court at $14,000.

On evidence from which it was not possible to arrive at an accurate value thereof the trial court arrived at a valuation of personal property, stocks, money, and deposits in the amount of approximately $21,214.85. The finding is not clear. Property of the value of $2,000 was

in possession of the plaintiff and the balance was in the possession or control of the defendant.

During the marriage of the parties, or in January 1940, the father of the defendant died and from him the defendant received an inheritance. This was in part an interest in land and in part in money. The trial court made its findings with reference to the money so received. The view taken here is that it was not proper for consideration since its identity and present existence was not established.

In real estate the defendant received an undivided one-fourth interest in fee simple in 160 acres of land the value of the total acreage of which was fixed by the trial court at $26,000, and an undivided one-fourth interest in remainder in 96.29 acres of land, the total value of which was fixed by the court at $38,516. By computation made by the trial court with reference to the life estate of the defendant's mother the interest of the defendant in this land was treated as one-fourth of $34,665, but no satisfactory legal basis has been found for this computation. The evidence of value here, as was true in the case of the personal property, was not sufficient to insure accuracy, but it is not possible on the record to reach greater accuracy. The value of the interest of the defendant in the 160 acres of land will be treated as $6,500. The value of the remainder interest of the defendant in the 96.29 acres of land will be treated as $9,629.

The evidence as to the present or prospective income from the interest in the 160 acres is so fragmentary that no estimate thereof is possible.

There is no present income to the defendant from the mentioned remainder interest. In legal contemplation there will be none until after the death of the mother of the defendant. She holds it as her homestead by election to take as a surviving spouse under statute rather than under the will of her husband who was the father of the defendant. She was a second

wife and there were children by the first wife, hence she took title to one-fourth of the area involved and a homestead interest in the entirety of this part of the land during her life.

This court has many times outlined the matters which shall be considered in arriving at a determination of an appropriate award of alimony and division of property in a case of divorce. This outline is stated as follows in Kinch v. Kinch, 168 Neb. 110, 95 N. W. 2d 319: "In determining the question of alimony or division of property as between the parties the court will consider the respective ages of the parties to the marriage; their earning ability; the duration of the marriage; the conduct of each party during the marriage; their station in life, including the social standing, comforts, and luxuries of life which the wife would probably have enjoyed; the circumstances and necessities of each; their health and physical condition; and their financial circumstances as shown by the property they owned at the time of divorce, its value at that time, its income-producing capacity, if any, whether accumulated or acquired before or after the marriage, the manner in which it was acquired, and the contributions each has made thereto. From these elements and all other relevant facts and circumstances, the court will determine the rights of the parties and make an award that is equitable and just."

Of particular significance in this case are the ages of the parties; the duration of the marriage; their station in life; the necessities, the health, and physical condition of each of the parties; their financial situation at the time of marriage and at the time of divorce; and the contributions made.

As to ages, there is a difference of about 20 years. There is little, if anything, in the record to suggest that this should require anything beyond what would be proper if they were more nearly the same age. The paramount suggestion of the record is, in the light of

prospective economic conditions, that reasonably equal division should be attempted.

This is true in view of the fact that the defendant is without personal earning capacity as is also true, it reasonably appears, of the plaintiff, and in view of the further fact that it does not appear that there is any more property and income from the existing interest than a sufficient amount to very modestly meet the needs and requirements of the parties and the minor child.

Herein the total of the estimate of value is approximately $51,343.85. The total value of real estate is $30,129. Two houses included in this are of the value of $14,000. One is occupied by the plaintiff and the other is capable of a rental income of $75 a month. The interest of the defendant in the 160 acres of land produces income, but so far as this record is concerned the amount is uncertain. The one-fourth remainder interest of $9,629 will not be capable of income production in favor of the defendant until after the death of his mother. This is all of the real estate in which the defendant has an interest.

It appears that the trial court in its conclusion as to the value of real estate of the defendant computed an interest in the value of the one-fourth interest in fee of the mother of the defendant in the homestead as a part of the property of the defendant. This computation was obviously improper.

As to personal property there is an item of equipment and household goods in the hands of the defendant of the value of $3,000. There is nothing to indicate that this is capable of producing income or that there is a market for its sale. There is an item of $2,000 as the value of the household goods and other personal property which are in the hands of the plaintiff. Of course this is not income producing. There are items of money due, bank stock, and savings and loan accounts amount-

ing to $16,214.85. These for the most part at least are capable of being converted into cash.

From the values fixed by the trial court modified as indicated herein it appears that the physical value of the defendant's interest in the real estate and the total value of the personal property, as already pointed out, amounts to approximately $51,343.85. The total value of the real estate is $30,129 and the total value of the personal property is $21,214.85.

By the division of the property made by the trial court plaintiff was awarded two lots of the value of $14,000, household goods of the value of $2,000, balance in a savings account in the amount of $4,790.20, and a judgment for $2,259. The total is $23,049.20.

On the basis of the computations made this left property to the defendant of the value of $28,294.65. The effect of this was to divide the total property more favorably to the defendant than to the plaintiff. The trial court, in all likelihood, made this division with the fact in mind that a considerable portion of the property had come to the defendant by inheritance, and made some allowance accordingly. It appears, in the light of this record, that the court exercised a sound discretion.

In view of the facts that the marriage was broken up on account of the acts of the defendant; that the plaintiff was awarded the custody of the minor child; that the award for child support is not likely to be sufficient to care for, educate, and maintain the child; and that in likelihood the only source of revenue the plaintiff will have is that which she will receive from what has been awarded by the decree together with the small amount to be received from social security, it does not appear that what was awarded to her by the decree was unreasonable or excessive.

The judgment of the district court granting a divorce to the plaintiff, and awarding custody of the minor child of the parties to the plaintiff, support for the child, the division of property, and an attorney's fee for

services on behalf of plaintiff is affirmed. An attorney's fee is allowed for services of plaintiff on appeal in the amount of $500. The motion made in this court for a temporary allowance for support is denied, however the permanent allowances for child support shall be made from and after the date fixed in the decree of the district court. The costs are taxed to the defendant.

AFFIRMED.